**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| GORDON L. SULLIVAN, SR., </br> Plaintiff, </br></br> v. </br></br> ANDREW M. SAUL, </br> Commissioner of the Social Security </br> Administration, </br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) | </br></br></br> CAUSE NO.: 2:18-CV-271-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Gordon L. Sullivan, and Plaintiff's Opening Memorandum [DE 22], filed January 21, 2019. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On March 1, 2019, the Commissioner filed a response, and on March 17, 2019, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.  Background**

On February 15, 2015, Plaintiff filed an application for benefits alleging disability beginning May 8, 2014. Plaintiff's application was denied initially and upon reconsideration. On May 10, 2017, Administrative Law Judge ("ALJ") Robert Long held a video hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On July 31, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since May 8,

1

2014, the alleged onset date.

3. The claimant has the following severe impairments: obesity, diabetes mellitus, essential hypertension, panic disorder, social anxiety disorder, substance induced depressive disorder, and major depressive disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c) with some additional limitations. More specifically, he is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently, stand or walk for a total of six hours of an eight-hour work day, and sit for a total of six hours of an eight-hour workday. He can maintain only occasional interaction with supervisors, only occasional and superficial interaction with coworkers, and no interaction with the general public. He can occasionally work outside, and he can only perform low-stress work (i.e., work in which change is only introduced gradually and requires no decision making).

6. The claimant unable to perform any past relevant work.

7. The claimant was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse

3

the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III.   Analysis

Plaintiff argues that the ALJ erred in evaluating the medical opinions and failed to properly assess his subjective symptoms. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

Plaintiff first objects to the ALJ's analysis of Plaintiff's treating physician, Dr. Candice Hunter. "[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v.*

4

*Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

In the more recent of two medical assessments, completed in 2017, Dr. Hunter indicated that Plaintiff had "poor/no[ ]" ability to relate to co-workers, deal with the public, deal with work stresses, maintain attention and concentration, behave in an emotionally stable manner, or relate predictably in social situations. The ALJ granted Dr. Hunter's assessments "great weight to the extent they are consistent with both the claimant's allegation that he often has difficulty being around other people and the objective medical records, which show a history of treatment for various psychological symptoms . . . . This evidence reasonably justifies a restriction to low-stress work that requires no more than occasional interaction with others."

From the outset, it is unclear which aspects of Dr. Hunter's assessment received "great weight" and which did not. The ALJ did not identify any of Dr. Hunter's conclusions that were not "consistent" with Plaintiff's complaints or the objective medical records. In the RFC, the ALJ

5

ultimately found that Plaintiff could maintain "occasional" contact with co-workers and supervisors and could perform "low-stress work." The record – including Plaintiff's testimony (*e.g.*, AR 39-41), medical record notes (*e.g.*, AR 314), and multiple reports from other doctors (AR 357-60, 363-65) – contained ample evidence that Plaintiff would have difficulty interacting with others in a workplace setting. Whichever of Dr. Hunter's conclusions the ALJ intended to reject, he did not provide a "sound explanation" for doing so, *Punzio*, 630 F.3d at 710, nor did he build an evidentiary bridge to his conclusions that Plaintiff could maintain occasional contact with co-workers and perform low-stress work. *O'Connor-Spinner*, 627 F.3d at 618. The ALJ also failed to analyze Dr. Hunter's opinions according to the required statutory factors, including the nature of her treatment history with Plaintiff and her specialization in the medical conditions at issue.

Plaintiff also objects to the ALJ's analysis of a 2015 medical source statement by Dr. Robert Buynak. The ALJ correctly reported Dr. Buynak's conclusion that Plaintiff's obesity and diabetes would not significantly affect his work capabilities. He ultimately granted Dr. Buynak's statement "partial weight" because subsequent records "reasonably justif[y] a restriction to work at the medium exertional level." However, the ALJ totally ignored the majority of Dr. Buynak's statement, which concerned Plaintiff's mental capabilities. Among other points, Dr. Buynak opined that Plaintiff's stress would "frequently" interfere with attention and concentration, that he would be off task 20% of the time, absent three days a workweek, and ultimately that he could not work due to his "psych issues." The ALJ's failure to address Dr. Buynak's findings about the effects of Plaintiff's depression and anxiety – described in the statement as Plaintiff's "primary" diagnoses – was tantamount to ignoring the doctor's opinion altogether. The ALJ was not required to accept Dr. Buynak's conclusions about Plaintiff's mental state, but he was required to consider them. *See*

*Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) ("An ALJ must consider all medical opinions in the record.") (citing 20 C.F.R. § 404.1527(b),(c); *Knight v. Chater*, 55 F.3d 309, 313–14 (7th Cir.1995)); *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply . . . ignor[e] evidence that points to a disability finding."); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Plaintiff also argues that the ALJ overemphasized his activities of daily living in assessing his capabilities in a work context. The ALJ found that the record "call[ed] into question . . . the alleged persistence, intensity, and limiting effects of the claimant's symptoms" in part because Plaintiff is "able to perform a considerable number of typical activities of daily living," including personal hygiene, grocery shopping, driving, swimming, running, and riding a bike. The Seventh Circuit Court of Appeals has repeatedly emphasized that a person's ability to perform daily activities are a poor indicator of ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer."); *Punzio*, 630 F.3d at 712 ("[The plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."). Those concerns are glaring here, given Plaintiff's issues with concentrating and interacting with others – problems which might be more easily accommodated at home than at work. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security

7

Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Moreover, the ALJ's analysis of Plaintiff's daily activities was cursory, and did not account for Plaintiff's issues completing the tasks. For example, the ALJ noted that Plaintiff was able to go grocery shopping, but did not address that Plaintiff has had several panic attacks in stores, that his wife went grocery shopping with him, or that he testified at the hearing that he no longer drove. To the extent Plaintiff's daily activities are considered indicative of his ability to work, these limitations must also be considered. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities.") (*citing Craft*, 539 F.3d at 680; *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)); *Denton*, 596 F.3d at 425 ("An ALJ . . . cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Finally, Plaintiff objects to the ALJ's inferences about the severity of his symptoms based on his treatment plan. The ALJ found that Plaintiff's treatment had been "rather minimal and conservative," and noted that he has not undergone surgery, had an "excessive number" of emergency room visits, or been hospitalized for any acute psychiatric episodes. The ALJ provided no basis for the inference that hospitalization would have been appropriate treatment for Plaintiff's medical issues. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) ("The [ALJ] went far outside the record when he said that if Voigt were as psychologically afflicted . . . he 'would need to be institutionalized and/or have frequent inpatient treatment' – a medical conjecture that the

administrative law judge was not competent to make.") (citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir.2014); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir.2014); *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir.2009). The ALJ also ignored evidence in the record that Plaintiff's mental illness and financial difficulties hindered him from seeking more treatment. *See, e.g.,* AR 336 (Plaintiff "went into a severe depression . . . and 'threw away all meds' and lost insurance . . . doesn't want A1C [blood test] in office, can't afford"); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (mental illness may prevent the patient from "submitting to treatment").

Plaintiff requests reversal with remand for an award of benefits. An award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. *Briscoe*, 425 F.3d at 356. The record in this case contained competing medical opinions issued in 2015 as to whether Plaintiff could work. Although the most recent opinion, issued by treating physician Dr. Hunter in 2017, contained numerous work-related restrictions, it was inconclusive on the ultimate issue of disability. *See* AR 477 (noting that additional testing would be "necessary" to determine the degree of Plaintiff's mental impairment, and a statement from Plaintiff's therapist "helpful" in determining disability). On this record, reversal for benefits is not appropriate. *See Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011) (affirming reversal for re-hearing, rather than an award of benefits, where "contradictory inferences could be drawn from the physicians' testimony"); *Campbell v. Shalala,* 988 F.2d 741, 744 (7th Cir. 1993) ("the record is not so clear that we can award or deny benefits on appeal").

9

On remand, the ALJ is instructed to consider the treating medical opinions in the manner described in 20 C.F.R. § 404.1527, and to provide a "sound explanation" if he or she rejects a treating physician's opinion. *Punzio*, 630 F.3d at 710. The ALJ must draw a logical bridge from the evidence as it appears in the record to his or her conclusions about Plaintiff's RFC, including the evidence that does not support his or her conclusions. *O'Connor-Spinner*, 627 F.3d at 618.

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Memorandum [DE 22] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 25th day of July, 2019.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record